REVERE REAL ESTATE, INC. *v.* LOUIS CERATO, JR., ET AL.

SPEZIALE, C. J., PETERS, PARSKEY, ARMENTANO and SHEA, Js.

Argued December 1, 1981—decision released January 19, 1982

*F. Woodward Lewis, Jr.,* with whom, on the brief, were *Ellen L. Sostman* and *Joseph M. Delaney,* for the appellants (named defendant et al.).

*Leon O. Gross* for the appellee (plaintiff).

*Frank St. John,* for the appellees (defendant Salvatore J. Prisco et al.).

PETERS, J. This action arises out of the nonperformance of a written contract for the sale of real property. The plaintiff, Revere Real Estate, Inc. (hereinafter Revere), sued the sellers, the defendants Louis Cerato, Jr., and Helen G. Cerato, to recover a real estate commission. The sellers thereupon impleaded the buyers, Salvatore J. Prisco and Anne D. Prisco, by a third-party complaint naming them as third-party defendants. The buyers responded with an answer, defenses and a counterclaim against the sellers. The trial court rendered judgment for Revere on its complaint, for the buyers on the sellers' third-party complaint and for the sellers on the buyers' counterclaim. Only the sellers have appealed.

The trial court's memorandum of decision and the record reveal the following facts. The sellers, on June 12, 1974, signed a real estate listing contract giving Revere an exclusive right to sell their prop-

erty at 81 Swain Avenue, Meriden. The listing contract entitled Revere to a commission of 6 percent of the gross sale price if "said property shall have been sold or a customer procured, ready, willing, and able to buy said property, either for the price herein or for any other price or upon other terms which may be acceptable to [the sellers]." Thereafter, in March 1975, as a result of Revere's efforts the sellers entered into a sales contract with the buyers for $38,500. The sales contract called for a $1000 deposit, which the buyers paid, and provided that "[i]f Purchaser fails to perform any of his obligations under this agreement, then Seller may, after notifying Purchaser, retain all payments made by Purchaser as liquidated and agreed damages; and all other rights and obligations of the Seller and Purchaser under this agreement shall terminate."

The trial court found that the defendant buyers were "ready, willing, and able" buyers within the terms of the listing contract, and that the plaintiff was therefore entitled to recover a commission of $2310, 6 percent of the sale price of $38,500. The court also found that the sellers had wrongfully taken from the property certain items, "at least the shower doors and shelves," which should have remained as "improvements . . . used with the property" in accordance with the terms of the sales contract. Finally, the court found that both the buyers and the sellers were willing to negotiate over the missing items, and some other disputed minor items of personal property, but ultimately failed to do so. On this basis, the court found that neither the buyers nor the sellers had sustained their burden of proof in their actions against each other on the sales contract.

The sellers, the sole appellants, have raised four claims of error: (1) the court's findings of fact with respect to the buyers' willingness to purchase are not supported by the evidence; (2) the court should have awarded the sellers the $1000 deposit; (3) the court should have found the buyers to be in breach of the sales contract; and (4) the court should have found for the sellers in the action on the listing contract because the buyers were not willing to close upon the terms of the sales contract. Because these claims are obviously interrelated, we will consider first the rights of the parties under the listing contract and then their rights under the sales contract.

# I

The right of a brokerage firm to recover a commission depends upon the terms of its employment contract with the seller. To be enforceable, this employment contract, often called a listing contract, must be in writing and must contain the information enumerated in General Statutes § 20-325a (b).[1] *Thornton Real Estate, Inc.* v. *Lobdell,* 184 Conn. 228, 229–30, 439 A.2d 947 (1981); *Hossan* v. *Hudiakoff,* 178 Conn. 381, 382, 423 A.2d 108 (1979). To recover its commission, the brokerage firm ordinarily must show that it has procured a customer

---

[1] General Statutes § 20-325a provides, in relevant part: "(b) No person, licensed under the provisions of this chapter, shall commence or bring any action in respect of any acts done or services rendered after October 1, 1971, as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall (1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the parties thereto."

who is ready, willing, and able to buy on terms and conditions prescribed or agreed to by the seller. *Walsh* v. *Turlick,* 164 Conn. 75, 80, 316 A.2d 759 (1972); *Busker* v. *United Illuminating Co.,* 156 Conn. 456, 465, 242 A.2d 708 (1968); *Dyas* v. *Akston,* 137 Conn. 311, 313, 77 A.2d 79 (1950). In the alternative, the broker may be entitled to recover if it has brought the buyer and the seller to an enforceable agreement. *Walsh* v. *Turlick,* supra, 80–81; *Spring* v. *Nagle,* 104 Conn. 23, 26–27, 131 A. 744 (1926). The listing contract may, however, make the broker's right to a commission dependent upon specific conditions, such as the consummation of the transaction and the full performance of the sales contract. *Spring* v. *Nagle,* supra, 27; *Stagg* v. *Lawton,* 133 Conn. 203, 210, 49 A.2d 599 (1946); *Nugent* v. *DelVecchio,* 36 Conn. Sup. 532, 537, 415 A.2d 1339 (1980).

The undisputed facts of the present case reveal that the sellers and the buyers entered into a binding contract of sale.[2] Because that contract was not consummated, its execution would not, per se, allow the plaintiff to recover under the terms of the listing agreement providing that a commission would be payable if "said property shall have been sold." *Nugent* v. *DelVecchio,* supra, 539. Its execution is, however, evidentiary of the procurement of a ready, willing, and able buyer on terms acceptable to the seller, the alternate basis of recovery stipulated in the listing contract.

The trial court's finding of fact that the Priscos were ready, willing, and able to purchase the Swain

---

[2] Counsel for the named defendants conceded at oral argument, contrary to the assertion in their brief, that the plaintiff's pleadings expressly alleged the execution of a contract of sale.

Avenue property is subject to review in this court only to determine whether, in light of the evidence and the pleadings in the record as a whole, it was clearly erroneous. Practice Book § 3060D; *Gilman v. Pedersen,* 182 Conn. 582, 585, 438 A.2d 780 (1981); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). In addition to relying on the execution of the sales contract, the trial court noted that it was the sellers who precipitated the failure to close by their unauthorized removal of certain fixtures from the premises at a time when the buyers were ready, willing, and able to proceed. The sellers argue that the buyers' readiness to close was conditioned upon the return of certain other items that were personal property, such as the electric garage door apparatus. The record reveals, however, testimony both by the buyers and by their attorney that the buyers would have been prepared to go ahead with the real property contract if the sellers had only returned the missing fixtures, and that the other property was the subject of a special side agreement. That it was the sellers' conduct which prevented consummation of the sales contract is supported furthermore by testimony of the sellers' attorney that the sellers regretted their contract because they considered its price inadequate. The sellers' testimony of willingness to restore the missing fixtures is insufficient to rebut the trial court's finding. Even if the testimony had been found to be credible, it would not have been dispositive, since the sellers presented no evidence that their willingness to cure their breach of the sales contract was ever communicated to the buyers. In light of all these circumstances, we conclude that the trial court's finding was not clearly erroneous.

Since the plaintiff has met its burden of proving that it has procured a buyer in accordance with the terms of the listing contract, the plaintiff is entitled to recover its commission. A seller cannot defeat a broker's right to its commission by his unilateral nonperformance of a sales contract unless the listing contract reserves the right to condition payment upon consummation of the sales contract. Once the trial court found that the buyers were ready, willing, and able to close upon the express terms of the sales contract agreed to by the sellers, judgment for the plaintiff was required as a matter of law. There was therefore no error in the judgment rendered upon the complaint against the named defendants.

## II

Our resolution of the issues between the plaintiff broker and the named defendants, the sellers, leaves little to be determined in the litigation between the sellers and the buyers. Since the buyers have not appealed the judgment against them on their counterclaim, we need consider only whether the sellers were entitled to recover on their claim for damages against the buyers.

The fact of the sellers' anticipatory breach of the sales contract by their wrongful removal of some fixtures would not necessarily have discharged the parties from further obligations under the contract. See *Collins* v. *Sears, Roebuck & Co.,* 164 Conn. 369, 382, 321 A.2d 444 (1973); *M. Shapiro & Son Construction Co.* v. *Battaglia,* 138 Conn. 238, 244, 83 A.2d 204 (1951); 2 Restatement (Second), Contracts § 243 (1981). As the trial court found, all the disputed items were "relatively insignificant." Nonetheless, the court found that the parties made no further real effort to consummate the transaction.

In effect, by their conduct they agreed to abandon the sales contract. See *Gaer Bros., Inc.* v. *Mott,* 147 Conn. 411, 416, 161 A.2d 782 (1960). In light of these findings, which the sellers have not challenged on this appeal, the trial court was not in error in concluding that the sellers had failed to sustain their burden of proof in their claim for damages against the buyers.

The sellers complain of the trial court's failure to adjudicate their claimed entitlement to the $1000 deposit made by the buyers when they executed the sales contract. Implicit in the conclusion that the sellers had failed to prove the buyers' breach is a conclusion that the sellers had no right to the deposit. By the terms of the sales contract, the sellers were to retain payments made by the buyers only "[i]f Purchaser fails to perform any of his obligations under this agreement . . . ." In the absence of proof that this condition was met, the sellers cannot sustain their claim to the $1000 deposit.

There is nothing inconsistent in the judgment of the trial court that a seller can become obligated to pay a real estate commission without being able to recover that payment, or other damages, from a buyer of the real estate. The broker has earned its commission when the terms of its listing contract have been met. Because the listing contract and the sales contract create independent rights and duties, the broker's right to its commission, once earned, cannot thereafter be defeated by the conduct of the parties to the sales contract.

There is no error.

In this opinion the other judges concurred.