[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff sues the defendant for a real estate commission allegedly earned as a consequence of his procuring a ready, willing and able buyer of defendant's property in accordance with a listing agreement of the parties.
The facts are as follows: Plaintiff is a real estate broker. Defendant is the owner of premises known as 162-170 Park Road, West Hartford. On January 25, 1988 defendant and plaintiff entered into an agreement by the terms of which CT Page 4076 defendant granted the plaintiff an open listing to sell his property and agreed that if plaintiff were to procure a customer ready, willing and able to buy said property at a price of $650,000, defendant would pay a commission of 6% of the gross sales price. At the time the listing agreement was signed, defendant provided plaintiff with information about the monthly rentals and expiration dates of leases defendant had with tenants of the property. This information was written on the back of the agreements. The listing agreement was prepared by plaintiff and identified prospective buyers, including William Gelinas. The defendant expressed surprise about Gelinas because he told plaintiff that he had attempted the year before to sell the property to Gelinas, but Gelinas had not been interested because the subject property was encumber by parking restrictions. These restrictions were imposed by the town of West Hartford on the Oakwood Restaurant, across Park Road and formerly owned by the defendant, as a condition of the restaurant being allowed to expand and required parking spaces for 14 cars on the subject property.
On January 26, 1988, the day after the listing agreement was signed, plaintiff returned to defendant with a purchase agreement signed by William Gelinas to buy the property for $600.00. The defendant again expressed surprise at Gelinas'' offer and asked plaintiff whether or not he had told Gelinas of the parking restrictions. The plaintiff said he had. The defendant then went to see Gelinas himself, said he wanted $650,000 and reminded Gelinas of the parking restrictions. Gelinas responded that defendant should get his attorney, who was well-connected politically, to get the parking restrictions changed.
A few days later plaintiff sent to defendant a purchase agreement, again signed by Gelinas, to buy the property for $650,000, free and clear of all encumbrances except "easements and restrictions of record, if any, and all provisions of any ordinance, municipal regulations, or public or private law." Defendant's attorney wrote to the plaintiff explaining that among the restrictions of record and municipal regulations to which the property was subject was the lease in favor of Oakwood Restaurant, as required by the town of West Hartford, to park cars on the property. The attorney asked that if Gelinas confirmed this understanding and initialed changes in the purchase agreement to that effect, the defendant would also sign the purchase agreement.
Gelinas refused to accept the changes, insisting he would only buy the property if the parking restrictions were moved. Shortly, thereafter, plaintiff initiated this suit for a real estate commission in the amount of $39,000, plus CT Page 4077 interest.
The law is clear that a real estate broker earns his commission when he procures a customer who is ready, willing and able to purchase upon the terms prescribed or accepted by the owner. Richter v. Drenckhahn, 147 Conn. 496, 500 (1960), Revere Real Estate, Ins. v. Cerato, 186 Conn. 74, 77-78 (1982). The fact that no contract between the owner and the purchaser for sale of the property is entered into does not preclude recovery by the broker. Finch v. Donella, 136 Conn. 621, 626
(1950); Investors Mortgage Co. v. Jessico, Inc., 6 Cir. CT., 445, 449 (1970). The listing agreement between the owner and broker is one for personal services and when the broker has produced a purchaser who is ready, willing and able to buy on terms prescribed by the owner, he is entitled to his commission, Stagg v. Lawton, 133 Conn. 203, 209 (1946).
The first issue is what were the terms of the listing agreement. The plaintiff testified that the listing agreement included a representation by defendant of all the leases to tenants of the property, which leases were identified in hand writing on the back of the agreement. The defendant testified the representation on the back was only of rent paying tenants in order to establish the rent roll. The significance of this disparity in testimony is that the hand writing does not list the parking restrictions on the property in favor of Oakwood Restaurant for the parking of 14 cars and this restriction was the basis for Gelinas refusing to purchase the property.
The court finds that the representations of rent paying tenants on the back of the listing agreement was for informational purposes and was not an integral part of the agreement. The typewritten face of the agreement prepared by the plaintiff does not refer to the leases. The court believes the defendant that he was giving the plaintiff facts about the rent roll so the plaintiff could pass those facts on to a potential purchaser, but defendant did not intend to give all information relating to liens or restrictions affecting title to the property.
Thus, when Gelinas refused to purchase subject to the parking restrictions he was not a ready and willing buyer and plaintiff is not entitled to his commission.
Gelinas' offer further provided that seller would convey the property by warranty deed free and clear of all encumbrances except "easements and restrictions of record." The purchasing restrictions in favor of Oakwood was recorded in the West Hartford land records. Gelinas, however, refused to purchase subject to that restriction so on that basis, also, he CT Page 4078 was not ready and willing.
Moreover, the court finds that neither the plaintiff nor Gelinas acted in good faith in this transaction. The court believes defendant's testimony that he informed both the plaintiff and Gelinas before Gelinas made the $650,000 offer that the property was subject to the parking restrictions and both of them knew Gelinas would not buy the property with that restriction on it. Both the plaintiff and Gelinas went through a charade to give the appearance that the $650,000 offer was real, when in fact it was not.
Based on the foregoing, judgment may enter for the defendant.
Robert Satter, J.