[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff has applied for a prejudgment attachment of the defendants' real estate in connection with its claim for a real estate commission. The court held evidentiary hearings on the application on January 9, February 18 and March 3, 1997. Although the hearings constituted somewhat of a mini court trial, it was in actuality hearings to determine whether there is probable cause that a judgment will be rendered for the plaintiff in at least the amount sought of $25,000. The parties have filed post trial briefs which the court has reviewed.
Based upon the totality of the evidence, the briefs of the parties and the court's own research as to the applicable law, the court finds as follows:
1. The law in Connecticut is quite clear that a real estate broker "is entitled to his commission as damages for the breach of an exclusive sale contract, if during the life of such a contract, the owner sells the property to a purchaser procured by his own efforts, or by other agents, or if the broker duringsuch period produced a customer ready, able and willing to buy the property." Emphasis added. John F. Epina Realty, Inc. v.Space Realty, Inc., 194 Conn. 71, 87 (1984). Also, see RevereReal Estate, Inc. v. Cerato, 186 Conn. 74, 77, 78 (1982).Manzin v. United Bank Trust Co., 6 Conn. App. 513 (1986).
Further, "`A proposed purchaser cannot be said to be able
to purchase when he is dependent upon third parties who are in no CT Page 4662 way bound to furnish the funds.'" Frumento v. Mezzanotte,192 Conn. 606, 617 (1984). Although Mezanotte concerned specific performance of a real estate agreement, our Supreme court cited with approval said quotation from a Wisconsin Supreme Court case dealing with a claim for a broker's commission.
2. Plaintiff and defendants entered into an exclusive listing agreement (plaintiff's Ex. A) on June 29, 1994 giving the plaintiff, as a licensed real estate broker, the exclusive right to sell two parcels of land owned by the defendants in Mansfield, Connecticut. The agreement had an expiration date of December 31, 1994.
3. The plaintiff subsequently listed the property in the Multiple Listing Service. Deborah Chabot of Ferrigno Realtors in Storrs, Connecticut introduced Brian Parrow (hereafter "Parrow") to the defendants. As a result of said introduction, the defendants and Parrow entered into agreements for the defendants to sell to Parrow 159 acres of land for $206,500 (plaintiff's Ex. B-1) and two acres ± for $63,500 (plaintiff's Ex. B-2). The sale of the two acres ± was subsequently consummated and a commission paid to the plaintiff. That sale is, therefore, not an issue in this case. The sale in question is the one described in plaintiff's Ex. B-1, hereafter ("B-1").
4. The exclusive right to sell listing contract (plaintiff's Ex. A) was for the period June 29, 1994 through December 31, 1994. There were no extensions.
5. The question, then, is whether, in regard to B-1, the plaintiff presented a buyer, Parrow, who was ready, willing andable to purchase the property, B-1, in accordance with the terms of the agreement (Ex. B-1) which was executed on August 15, 1994, which had a closing date of January 31, 1995. The answer is that the plaintiff did not. The reasons include, but are not limited to, the following:
At the time of the execution of the agreement concerning B-1, at the time of the proposed closing and for many months thereafter, Parrow did not have the financial resources to consummate the agreement. He could not obtain them without selling his own house and/or obtaining the necessary financing from a lending institution. He clearly could not obtain first mortgage financing when the agreement called for a $45,000 purchase money first mortgage unless he were to obtain a first CT Page 4663 mortgage from a lending institution which would include the amount of and negate the need for the purchase money mortgage. He could not sell his house, and his efforts to obtain mortgage financing from a lending institution were unsuccessful. This inability of Parrow to purchase was known or should have been known by the listing broker, plaintiff, and Deborah Chabot, the co-broker. His inability to purchase was clearly known to the plaintiff as described in a letter from the plaintiff to the defendants on August 19, 1994, the letter signed by Marshall Kronholm, an employee of the plaintiff. See plaintiff's Exhibit C. Despite that letter, defendants executed the agreement on the same date, August 19, 1994, with the full knowledge of both Marshall Kronholm and Deborah Chabot who signed as witnesses.
6. Long after the expiration of the listing agreement, the defendants entered into a new contract with Parrow executed on August 31, 1995 to sell the same 159 acres for $207,000. However, this contract differed from the first agreement (plaintiff's Ex. B-1) in at least one major respect, namely, that the purchasers under this contract (defendants' Ex. 1) were both Parrow and Marcel Goepfert, hereafter ("Goepfert"). Goepfert had the financial resources to consummate the purchase, and with him as a co-signer, Parrow and Goepfert were able to obtain the necessary financing by a mortgage for $300,000 with First Pioneer Farm Credit, ACA (plaintiff's Ex. G). Without Goepfert, Parrow was still unable to purchase the 159 acres.
7. Plaintiff claims that since Parrow was able to purchase with the help of Goepfert on November 29, 1995, and would have been able to purchase under the first agreement for B-1 (plaintiff's Ex. B-1) with the assistance of Goepfert, Parrow was, therefore, able to purchase and consequently plaintiff was and is entitled to a real estate commission. The court is not persuaded. Plaintiff's argument fails for multiple reasons.
 (a) There is no evidence that Goepfert was able to or willing to or bound to assist Parrow in the purchase under the first contract (plaintiff's Ex. B-1).
 (b) As hereinbefore stated, the rule cited in Frumento v. Mezzanotte supra is the law of this state as it applies to claims for a real estate commission, namely "A proposed purchaser cannot be said to be able to purchase when he is dependent upon third parties who are in no way bound to furnish the funds." emphasis added. CT Page 4664
 (c) There is no evidence that Goepfert was bound to furnish the funds, by co-signing or otherwise at any time. Plaintiff had nothing to do with Parrow obtaining the assistance of Goepfert, and without him, Parrow was still unable to purchase the subject property on August 31, 1995, anytime thereafter, including the actual date of purchase, November 29, 1995.
8. Plaintiff has offered an additional basis for being entitled to a commission and cites Revere Real Estate, Inc. v.Cerato, 186 Conn. 74, 78 (1982). "In the alternative, the broker may be entitled to recover if it has brought the buyer and the seller to an enforceable agreement" citing Walsh v. Turlick,164 Conn. 75, 80 (1972). The Revere case rested, however, on the court's finding that the buyers were ready, willing and able to purchase and that it was the sellers who breached the contract by removing certain fixtures preventing the consummation of the contract. Accordingly, the Revere case is inapplicable to the case at bar. As for Walsh v. Turlick, supra, that case also stated at pg. 82, that if the plaintiff alleges a responsibility to produce a buyer ready, willing and able to purchase, the plaintiff shall be held to that proof, citing Lesser v.Altnacraig Convalescent Home, Inc., 144 Conn. 488. In the case at bar, plaintiff's complaint alleges the listing agreement (¶ 2) and that it "provided that the defendant agreed to pay the plaintiff a commission if the plaintiff procured a buyer ready, willing and able to purchase the property on the terms set forth."
The listing agreement (plaintiff's Ex A) (¶ 5) provides that the "owner will pay broker a commission of 10% of the agreed upon sales price if during the term of this contract:
(a) The Listed Property is sold; or
 (b) Owner, Broker or anyone else find(s) a buyer ready, willing and able to buy the Listed Property. . . ." emphasis added.
The court finds that the listed property was not sold during the term of the listing agreement and has already found that neither the plaintiff nor anyone else found a buyer able to purchase. CT Page 4665
The court further finds that the plaintiff has not shown probable cause that it will prove paragraph six of its complaint, namely "As a result of the efforts of the plaintiff or his realestate salesman, the defendant sold and conveyed the property to the customer for $207,000." emphasis added.
The court further finds that although Goepfert assigned his interest in the agreement to Parrow, he was an integral part of the purchase without whom it would not have been consummated.
The court further finds that the plaintiff did little if anything of consequence beyond procuring a buyer it knew was not able to purchase.
9. Finally, plaintiff cites language in John F. Epina RealtyInc. v. Space Realty Inc., 194 Conn. 71, 88 (1984) that "During the life of an exclusive sale contract, an agreement between the owner and the ultimate purchaser to sell and buy, whether or not specifically enforceable, gives rise to a cause of action on the part of an exclusive broker who uses reasonable efforts to sell the property."
However, also on page 88, the court stated "The plaintiff's right to a commission is controlled by the provisions of its contract with the defendants. This court has already found that the provisions of the listing agreement were not fulfilled.
Accordingly, based upon the totality of the evidence and for the reasons hereinbefore set forth, the court finds that the plaintiff has failed to meet its burden to show that there is probable cause that a judgment will be entered in favor of the plaintiff.
The application for prejudgment remedy (attachment) is denied.
Rittenband, Judge