[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter was returned to court on December 16, 1997. The plaintiff's complaint was contained in a single count which claimed a foreclosure of a statutory real estate broker's lien against defendants' interest in a parcel of real estate. The basis for the claim was the allegation that plaintiff had performed real estate broker's services for the defendant pursuant to a contract which resulted in a lease of the listed parcel and was due a commission of $49,608, which defendant refused to pay. CT Page 12876
In February of 1998, plaintiff amended his complaint adding a second count in contract alleging that defendant breached a written listing agreement dated May 15, 1995, for refusing to pay a commission due of $49,608.
In May of 1998, the plaintiff amended his complaint for the second time adding a third count. In this count, plaintiff claimed the listing agreement provided for the payment of commissions to him based on renewals or extensions of the lease term.
The defendant filed appropriate responses to these complaints, closing the pleadings. However, when the matter was assigned for hearing on September 9, 1998, both parties agreed to submit new pleadings which would conform to the anticipated evidence. Plaintiff's final complaint was dated September 30, 1998. It contains five counts: count one seeks a foreclosure of a broker's lien; count two alleges a breach of a listing agreement in that defendant has refused and neglected to pay plaintiff the commission due him upon a leasing of the premises listed; count three asserts the plaintiff is entitled to appropriate commissions on any renewal or extension of the lease; count four sounds in quantum meruit; count five expresses a claim in unjust enrichment.
Defendants responded to this complaint by filing an answer to all five counts; four special defenses to the first, second and third counts; and one special defense to the fourth and fifth counts. Plaintiff replied in denial closing the pleadings.
The pleadings indicate that the parties, plaintiff broker and the defendant owner, entered into a listing agreement pertaining to 888 North Colony Road, Wallingford, Connecticut, a property owned by defendant. The listing agreement contemplated a lease of this property.
The broker ultimately secured a ground lease of the subject premises. The defendants admit that the defendant, Alfred E. Motzer, has failed to pay the sum paid by the plaintiff, but deny that the defendant, Alfred E. Motzer, is indebted to the plaintiff and further deny that the lien described in paragraph 6 of the first count of the plaintiff's second amended complaint, is valid. The defendants also admit that the defendant, Alfred E. Motzer, and the plaintiff entered into a listing agreement together with an addendum attached, dated March 18, 1995, and CT Page 12877 that upon the lease of said industrial building in accordance with the terms of said listing agreement, that the defendant, Alfred E. Motzer, was to pay a commission to the plaintiff.
In special defenses to the first, second and third counts, the defendants assert that the plaintiff did not obtain a lease for the property offered for lease by the defendant, Alfred E. Motzer, in accordance with the terms of the listing agreement, and addendum, dated March 18, 1995, between the plaintiff and the defendant, Alfred E. Motzer. They allege that the listing agreement between the parties failed to properly identify the property that was the subject of the lease negotiated on behalf of the defendant, Alfred E. Motzer, by the plaintiff, as required by Section 20-328-6 (a) of the Regulations for Connecticut State Agencies. The special defense further alleges that the listing agreement between the parties did not contain all the terms and conditions of the lease including the commission to be paid in connection with lease negotiated on behalf of the owner, the defendant, Alfred E. Motzer, by the plaintiff as required by Section 20-328-6a of the Regulations of Connecticut State Agencies. A further special defense alleges that the listing agreement between the parties was not executed by the owner, the defendant, Alfred E. Motzer, in the manner for conveyances in § 47-5 of the General Statutes as required by § 20-325a(b)7 of the General Statutes and Section 20-328-6(a) of the Regulations for Connecticut State Agencies.
The defendant also filed special defenses to the fourth and fifth counts as follows:
 The plaintiff, a licensed real estate broker, is not entitled to recover a commission from the defendant, Alfred E. Motzer, on the grounds of quantum meruit, unjust enrichment or any other equitable claim.
The evidence permits the court to find as follows:
1. On or about January 7, 1995, the defendant, Alfred E. Motzer, owner of a parcel of land described as 888 North Colony Road, Wallingford, Connecticut, contacted the plaintiff, McLaughlin Real Estate, noting that another agent's lease listing on the industrial parcel (Hobson Motzer, Inc. parcel) had expired and inquired whether the plaintiff agent was interested. (Plaintiff's Exhibit A). CT Page 12878
2. Marilyn Nowlan, an agent of the plaintiff, met with Mr. Motzer and prepared a listing for the property at 888 North Colony Road, to begin on March 18, 1995. (Defendant's Exhibit 1).
3. The defendant, Alfred E. Motzer, signed an exclusive right to sell/lease/exchange multiple listing contract and addendum thereto on or about March 15, 1995. Marilyn L. Nowlan, the authorized representative of the plaintiff, executed the agreement and addendum on March 22, 1995. Christopher McLaughlin also signed both documents on March 22, 1995. (Plaintiff's Exhibit B).
4. The effective date of the contract was March 18, 1995. It was to remain in effect until September 13, 1995. The owner, defendant Motzer, authorized the broker to secure offers for the real property from prospective buyers and lessees upon the following terms and conditions, or upon any other terms and conditions agreeable to owner. The listing described the property as 888 North Colony Road, Wallingford, approximate size 2.25 acres; the parcel was improved by a 12,456 square foot industrial building fronting on Route 5 and a Burger King restaurant. The terms and conditions for a lease were as follows:
 Rental of $7.50/square foot — net net net; Security deposit — negotiable; Lease term — five years; The owner is to pay the following: lessee pays everything; The lessee is to pay the following: taxes, insurance, common area and maintenance and common area charges.
The contract provided for a commission fee of 6 percent of the total net rental. It also provided that the owner will also pay commissions on renewals, extensions, exercises of options or new leases for the same property. The addendum specified that the commission was to be paid in even installments from the rent received over the first twelve months and the commission on a renewal of a five-year lease limited to first five-year renewal. (Plaintiff's Exhibit B).
5. In May of 1995, defendant Motzer wrote to agent Nowlan expressing a disinclination to sell his industrial building, recognizing, however, that industrial tenants are currently rare and that a retail tenancy might require partial or total demolition of the existing industrial building. He indicated, however, he would consider financing some moderate renovation if CT Page 12879 a lease were attractive enough. (Plaintiff's Exhibit L).
6. In August of 1995, a prospective tenant for 888 North Colony sought a lease proposal from the plaintiff. The proposed use was retail and would require extensive renovations from the owner. (Plaintiff's Exhibit G). Defendant responded to this proposal offering a lease for ten years with two five-year options. This offer was contingent on the tenant financing remodeling or demolition and constructing a new building.
7. Later in the month of August, defendant wrote to agent Nowlan describing how the present industrial building of 12,456 feet could be altered to provide the prospective tenant with 800 square of retail space. (Plaintiff's Exhibit C).
8. Further negotiations between the owner, the broker and the tenant resulted in a new offer from defendant to the prospective tenant. The new offer, dated August 29, 1995, was for a ten-year lease of a new building with annual lease payments by tenant of $80,000 (with periodical adjustments for cost of living or some other index). This offer required tenant to demolish the existing building and build a new 8000 square foot building at tenant's expense assisted by a $400,000 contribution from defendant owner. (Plaintiff's Exhibit I). Negotiations continued between the prospective tenant and defendant. In September of 1995, the plaintiff and defendant extended the listing agreement to March 17, 1996. On September 7, 1995, tenant agreed to a ten-year lease with annual payments of $78,000 or $9.75 per square foot net net net. (Plaintiff's Exhibit J.)
Plaintiff's Exhibit E and defendant's exhibit 2 disclose that further negotiations resulted in the acceptance by owner Motzer of a more detailed offer from the tenant. This offer increased the rent beginning in the sixth year from $78,000 to $87,360. It confirmed the owner's obligation to contribute $400,000 to the cost of a new building and provided that tenant will be responsible for procuring a building permit and required tenant to begin paying rent 120 days after it obtained site plan approval from the Wallingford Planning and Zoning Commission.
These negotiations resulted in the execution of a ground lease dated January 5, 1996, between defendant Alfred E. Motzer and the tenant Western Auto Supply Company, d/b/a Parts America, of a portion of a parcel of land located at 888 North Colony Road, Wallingford, Connecticut. The lease permitted the tenant to CT Page 12880 demolish the existing industrial building and to construct a new retail building on this parcel with owner making a contribution of $400,000 toward the demolition site work and construction costs of the new 80' x 100' retail building at 888 North Colony Road.
The term of the lease was ten years commencing 120 days after lessee obtained site plan approval. The lease provided the tenant with extension options, required the lessee to pay $78,000 per year for years one through five, and $87,360 per year for years six through ten. The defendant McLaughlin Real Estate of Wallingford was recognized in the lease as the broker in connection with this lease agreement. The lease was terminated on April 1, 1996, and reinstated on the 31st day of July 1996, to reflect a conveyance of a strip of land to the State of Connecticut for highway widening purposes.
On July 8, 1996, the Wallingford Planning and Zoning Commission approved the site plan for the building to be constructed on defendants' land. The building was constructed, and the tenant commenced business on or about November 15, 1996. Defendant land landlord was entitled to collect and did collect rent starting in November of 1996.
9. On October 30, 1996, the plaintiff submitted to defendant an invoice for professional services rendered according to the listing contract. This letter requested a total payment of $49,608 to be paid in twelve monthly installments of $4,134.00, representing a 6 percent commission computed against a rent total of $826,800 for ten years. (Defendant's Exhibit 3) dated October 30, 1996.
10. Defendant responded to this letter by sending a check for $2,134 to the agent. In his cover letter, defendant contended that the listing agreement did not contemplate a ground lease with owner being required to contribute $400,000 to the new building and that the commission should be calculated on net rent; i.e., $826,800 less than his $400,000 contribution with the commission payable in twelve equal monthly payments based on the first five years commencing in November 1996, and the commission on the next five years being payable in twelve equal monthly payments, commencing during the first month of the sixth year assuming the tenant has not defaulted. (Defendant's Exhibit 4).
11. At the hearing and in his posttrial memo, defendant CT Page 12881 argued that he had borrowed the $400,000 contribution to the new building and therefore his contribution should be treated as a normal component of a net net net lease for purposes of calculating a commission on such a lease.
12. The plaintiff disagreed with defendants' analysis and offer of compromise. In consequence he served defendant with a "Notice of Intent to File Claim for Lien" and filed a claim for lien in the land records of Wallingford on November 20, 1996. (Plaintiff's Exhibit K.)
Defendants' memorandum alleges that plaintiff neither alleged, nor offered evidence that the lien recorded by plaintiff on November 20, 1996, was recorded within thirty days of the date the tenant, Western Auto, took possession of the leased premises. The court finds to the contrary. Section 20-325g of the General Statutes requires a broker's lien to be filed within thirty days after the tenant takes possession of the premises. The written lease provides for a lease commencement date 120 days after lessee obtained site plan approval. Lessee obtained site plan approval on July 8, 1996. The 120 days expired on November 8, 1996 — the recording of the lien on November 20, 1996, took place within thirty days of the date the tenant took legal possession of the premises.
Defendant argues that the listing agreement is not valid and enforceable because it does not comply with Requirement 7 of § 20-325a(b) of the General Statutes, which provides that the listing agreement must "be signed by the person or persons for whom the acts were done or services rendered or by an agent authorized to act on behalf of such person pursuant to a written document executed in the manner for conveyances in § 47-5 of the General Statutes. Although acknowledging that he signed the written listing agreement, defendant notes his signature was neither acknowledged nor witnessed as required by § 47-5 of the General Statutes. A close look at § 7 of 20-325a(b) reveals that the participial phrase "pursuant to a written document executed in the manner provided for conveyances in section 47-5" modifies only the noun "agent" and bears no reference to the person or persons for whom the acts were done or services rendered. Accordingly, neither witnesses nor an acknowledgment was necessary to validate defendant's signature.
Defendant's special defenses to the fourth and fifth counts of plaintiff's complaint deny that recovery of a broker's CT Page 12882 commission in either quantum meruit or unjust enrichment is authorized under existing Connecticut law. Defendant's memorandum notes that listing contracts are governed exclusively by § 20-325a of the General Statutes, citing William Pitt. Inc. v.Taylor, 186 Conn. 82, 84 (1982), and that faulty listing agreements will not be overcome by pleading quantum meruit; Goodv. Paine Furniture, 35 Conn. Sup. 24, 27-28 (1978), or from seeking equitable relief; Currie v. Marcino, 13 Conn. App. 527,532 cert. denied, 207 Conn. 809 (1988); Goldblatt v. Panza,24 Conn. App. 250, 253 (1991).
The plaintiff does not dispute that the teaching of these cases precludes recovery under alternative theories in equity or quantum meruit. The plaintiff, while not admitting deficiencies in the listing agreement's description of the property and the conditions authorized in the listing contract, relies on subsection (c) of the statute to overcome any asserted deficiencies. Public Act 94-240, passed in the February Regular Session, was approved June 2, 1994. Section 3(c) was designated to take effect on July 1, 1994, reads as follows:
 (c) Nothing in subsection (a) of this section or subdivisions (2) to (6) inclusive of subsection (b) of this section shall prevent any licensee from recovering any commission, compensation or other payment in respect to any acts done or services rendered, if such person has substantially complied with subdivisions (2) to (6) of subsection (b) of this and it would be inequitable to deny such recovery.
The listing contract (Exhibit B) was in effect as of March 18, 1995, and is accordingly subject to this amendment.
Defendant's supplemental memorandum filed October 21, 1998, asserts that the only technical noncompliance claim made by defendants is that the listing agreement was not executed in accordance with the provisions of subdivision (7) of subsection (b), which requires that a listing agreement be executed by the person or persons for whom the acts were done or services provided (the defendant) in the manner provided for conveyance in § 47-5 of the General Statutes; i.e., witnessed and acknowledged. The court has previously found no merit in this statutory interpretation.
In special defenses to the first, second and third counts of plaintiff's complaint, the defendant contends that plaintiff did CT Page 12883 not obtain a lease for the property offered for lease by defendant in accordance with the terms of the listing agreement. In his memorandum, defendant argued that he offered for lease a 12,456 square-foot industrial building on Route 5, located on a 2.25 acre lot, located at 888 North Colony Road, Wallingford, Connecticut, which lot included the present Burger King. The lease, which the defendant eventually executed was a ground lease for a portion of this parcel excluding the Burger King site. The ground lease permitted the tenant to demolish the industrial building and to construct a retail building at tenant's expense together with a $400,000 contribution from the defendant, Alfred E. Motzer. The defendant contends that the common, natural and ordinary meaning of the language of the listing agreement precluded the payment of the commission unless the 12,456 square-foot industrial building was leased during the term of the listing agreement. The court rejects this argument.
The defendant further argues that the listing agreement failed to properly identify the property that was the subject of the negotiated lease as required by Section 20-328-6(a)[1] of the Regulations for Connecticut State Agencies[2] and General Statutes § 20-325a.
 A description of property in the listing agreement need not be stated as definitely and completely as in a contract for the sale of land within the Statute of Frauds, General Statute § 52-550, since in this state a contract employing a broker to sell land is not within the Statute of Frauds.
Stagg v. Lawton, 133 Conn. 203, 209 (1946).
In Brazo v. Real Estate Commission, 177 Conn. 515, 522
(1979), the Supreme Court interpreted § 20-328-1 of the Regulations of the Connecticut State Agencies. This section reads as follows:
Listing Agreements:
 All listing agreements shall be in writing properly identifying the property and containing all the terms and conditions of the sale including the commission to be paid, the expiration date and the signatures of all parties concerned. An exclusive agency listing or exclusive right to sell listing shall be clearly indicated CT Page 12884 in the listing agreement.
Insofar as this regulation refers to "properly identifying the property" it is identical to the current regulation § 20-328-6(a). In Brazo, the court stated as follows: "Under § 20-328-1 of the Commission Regulations, which requires that a listing agreement properly [identify] the property", a listing agreement which describes the property by reference to its ownership, location and approximate size sufficiently describes the property. The court concludes that the subject listing agreement satisfies the regulation requirement with regard to properly identifying the property.
In the third special defense to the first, second and third counts of plaintiff's complaint, the defendants allege that "Said listing agreement between the parties did not contain all the terms and conditions of the lease including the commission to be paid in connection with the lease negotiated on behalf of the owner, the defendant, Alfred E. Motzer, by the plaintiff as required by § 20-328-6(a) of the Regulations for the Connecticut State Agencies. Exhibit A of this Memorandum.
The language of the Regulation "containing all of the terms and conditions of the sale, exchange or lease including the commission to be paid, the date on which the listing agreement shall be entered into and the expiration date amplifies § 20-325a of the General Statutes.
Exhibit B of the listing contract satisfied the requirements of the statute as amplified by the Regulation. The listing agreement contains the effective date of this contract, March 18, 1995, and the expiration date, December 13, 1995. Under Paragraph e, subdivision (b), entitled "Commission Fee" the contract provides owner will pay broker a commission fee of 6 percent of total net rental. It also requires the owner to pay commissions on renewals, extensions, enlargements, the exercise of options or new leases for the same property; and, in the addendum, it conditions this commission on renewal of a five-year lease by limiting it to the first five-year renewal. Paragraph F of the listing agreement, subdivision 2, which has reference to a lease, indicates a rental of $7.50 per square foot, NNN, for a lease term of five years with the lessee paying everything. Subdivision 2(e) stipulates that the lessee is to pay the following: taxes, insurance, common area maintenance and common area changes. While it appears from the language and from the testimony of the CT Page 12885 parties that the parties originally intended a conventional triple net lease of the industrial building, the listing agreement authorized the broker to secure offers for the real property from prospective buyers and lessees upon the terms previously noted or upon any other terms and conditions agreeable to the owner. The ground lease executed by the parties conforms to this intention: The lessee covenanted to keep and maintain the demised premises at its own cost and expense, including all buildings and improvements of every kind which may be part thereof; to pay and discharge as they become due, promptly and before delinquency, all real estate, taxes and special assessments; to contract in its own name and fully and promptly pay for all water, heat, light, power, telephone service and other public utilities; to maintain public liability expense, insurance at lessee's sole cost and expense; to maintain fire and casualty insurance with extended coverage on the demised premises during the terms of this agreement in an amount equal to at least 100 percent of the full replacement value including foundation costs, site preparation and excavation costs. The court concludes that the defendant has failed to sustain his burden of proof on the special defenses to the first, second and third counts.
"The right of a brokerage firm to recover a commission depends upon the terms of its employment contract with the seller. To be enforceable, this employment contract, often called a listing contract, must be in writing and must contain the information enumerated in General Statutes § 20-325." ThorntonReal Estate v. Lobdell, 184 Conn. 228, 229-30 (1981). The broker has earned its commission when the terms of the listing contract have been met, Revere Real Estate, Inc. v. Cerato, 186 Conn. 74,81 (1982).
The listing contract and the sales contract create independent rights and duties. Id., p. 81. The statute governing listing contracts, § 20-325a, and the regulations amplifying this statute apply exclusively to listing contracts and not to the sales contract. If the broker and the owner have entered into a valid listing contract in conformity with the requirements of § 20-325a, the broker is entitled to a commission upon whatever terms the listing contract stipulates. William Pitt.Inc. v. Taylor, supra, p. 84. In this instance, the court finds the parties entered into a valid and binding listing agreement complying with the statute. The owner authorized broker to secure offers for the real property from prospective buyers and lessees upon the terms previously noted or upon any other terms and CT Page 12886 conditions agreeable to owner. The broker in this instance has secured an offer for a ground lease of a portion of owner's property contingent upon a contribution from owner towards the demolition of an existing building and a contribution from the owner of $400,000 for the construction of the new building by the tenant. The lease was a conventional net net lease with a term of ten years. The owner accepted the tenant's offer in writing, concluded the lease and placed the tenant in possession and collected the rent stated in the lease but has refused to pay the commission. The court concludes that the plaintiff has sustained his burden of proof on the first and second counts of his complaint but has failed to sustain his burden of proof on the third count. Since the court has found for the plaintiff on the second count based upon an express written contract, the court will accordingly find for the defendant on counts four and five.
Judgment may enter for the plaintiff in the amount of $49,608 on both counts one and two, together with costs. The court will not grant prejudgment interest to plaintiff in view of defendant's good faith effort to compromise this claim prior to suit.
Dorsey, J. Judge Trial Referee