VINCENT METRO, LLC *v.* KENNETH S. GINSBERG ET AL.
(AC 33654)

Lavine, Robinson and Sheldon, Js.

Submitted on briefs September 17—officially released December 18, 2012

*Peter E. Ricciardi* and *Albert J. Oneto IV* filed a brief for the appellant (plaintiff).

*Kenneth A. Votre* filed a brief for the appellees (defendants).

SHELDON, J. The plaintiff, Vincent Metro, LLC, a licensed real estate broker, commenced this action against four defendants—Kenneth S. Ginsberg and his company, YAH Realty, LLC (YAH), and two of their customers, John Fitzpatrick (John) and Rose Fitzpatrick (Rose)—to recover commissions it claims to have earned under an exclusive listing agreement between itself and YAH for certain of YAH's commercial condominium units in Hamden. The action is now before this court on the plaintiff's appeal from the judgment of the trial court denying the plaintiff's application for a prejudgment remedy against YAH in the amount of $22,568.55, a sum representing the total of all commissions the plaintiff seeks to recover herein. The plaintiff claims that the trial court committed clear error in denying its application for a prejudgment remedy because the evidence presented to it established probable cause that it will recover judgment against YAH in an amount equal to or greater than the requested sum. The plaintiff claims that the evidence established its right to recover the commissions here at issue by proving that it procured ready, willing and able buyers for three of YAH's listed condominium units during the term of the listing agreement. We agree with the plaintiff's claim with respect to one of the listed units, as to which YAH and John, a buyer procured by the plaintiff, entered into a written sales agreement during the term of the listing agreement. We disagree with the plaintiff, however, with respect to the other two listed units,

which YAH eventually sold to John and Rose over two years after the listing agreement had expired. Accordingly, we affirm in part and reverse in part the judgment of the trial court.

The following facts, which are undisputed, are relevant to our resolution of the plaintiff's claims on appeal. YAH owned an undeveloped commercial property in Hamden, known as Corporate Ridge, which had been approved for the development of commercial condominium space in the form of a large metal building that was to be subdivided into individual garage units that were to be sold separately to interested parties. YAH entered into an exclusive listing agreement with the plaintiff for the sale of such units for the period from July 18, 2005 to January 7, 2006. Under that agreement, YAH agreed to pay the plaintiff a commission in the amount of 5 percent of the purchase price for each unit that was either sold during the period of the agreement or for which, in that same time frame, the plaintiff found "a buyer . . . who [wa]s ready, willing and able to buy . . . the property upon the authorized terms and conditions of the sale . . . or upon any other terms and conditions acceptable to [YAH]."

During the term of the listing agreement, the plaintiff procured a buyer, John, for one of the listed units. On December 13, 2005, John and YAH entered into a written contract for the purchase and sale of that unit, known as unit 16, pursuant to which John paid the plaintiff an initial deposit of $20,000.[1] The contract set a closing date of June 30, 2006, but further provided that if construction of the unit was not completed by that date, YAH would have an additional sixty days to complete its construction. Construction of unit 16 was not completed by the closing date; nor was it completed within

[1] The deposit check was drawn on the account of Rose, who was not a party to that purchase agreement.

sixty days thereafter. John thus cancelled his contract for the purchase of unit 16 and sent the plaintiff a letter demanding the return of his $20,000 deposit, which he asked to be turned over to YAH. Nearly two years later, on April 14, 2008, John and his mother, Rose, jointly purchased two other units at Corporate Ridge, known as units 12 and 13, directly from YAH. YAH has never paid the plaintiff a commission in connection with either John's cancelled contract for the purchase of unit 16 or John and Rose's later purchase of units 12 and 13.

On October 21, 2009, the plaintiff filed this action against the defendants, claiming, inter alia, that they had conspired together to deprive it of commissions to which it was entitled in connection with the two previously described transactions. On November 8, 2010, the plaintiff filed an application for a prejudgment remedy in the amount of $22,568.55, a sum representing the total of all commissions it claimed to have earned by procuring ready, willing and able buyers for YAH's listed units: $6450 for the first transaction, involving unit 16; and $16,118.55 for the second transaction, involving units 12 and 13. On July 12, 2011, the court denied the plaintiff's application for a prejudgment remedy. With respect to the first transaction, the court determined that the plaintiff "produced a buyer who was not ready or willing to purchase [YAH's] property unless a certain contingency was fulfilled," to wit: that the condominium unit be built by the closing date or within sixty days thereafter. The court reasoned that because that contingency had not been fulfilled, John was within his rights to cancel the contract, and thus the plaintiff was not entitled to a commission in connection therewith. As to the second transaction, the court noted that "a listing agreement's termination date cannot thereafter be construed as an open ended listing" and denied the plaintiff's application on the ground that there was

"insufficient evidence that [that] sale was negotiated in 2005 or 2006." Although the court noted that "[a] full hearing with all relevant parties testifying might change the application of the law," it denied the plaintiff's application on the basis of the evidence then before it. This appeal followed.[2]

"A prejudgment remedy means any remedy or combination of remedies that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment. . . . General Statutes § 52-278a (d). A prejudgment remedy is available upon a finding by the court that there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff. . . . General Statutes § 52-278d (a) (1). . . . Proof of probable cause as a condition of obtaining a prejudgment remedy is not as demanding as proof by a fair preponderance of the evidence. . . . The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. . . . Under this standard, the trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits. . . .

---

[2] The granting or denial of a prejudgment remedy is a final judgment for purposes of appeal. See General Statutes § 52-278*l* (a); *Socci* v. *Pasiak*, 116 Conn. App. 685, 978 A.2d 96 (2009).

"As for [the] standard of review [on appeal], [our Supreme Court has instructed that an appellate] court's role on review of the granting [or denial] of a prejudgment remedy is very circumscribed. . . . In its determination of probable cause, the trial court is vested with broad discretion which is not to be overruled in the absence of clear error. . . . In the absence of clear error, [a reviewing] court should not overrule the thoughtful decision of the trial court, which has had an opportunity to assess the legal issues which may be raised and to weigh the credibility of at least some of the witnesses. . . . [On appeal], therefore, we need only decide whether the trial court's conclusions were reasonable under the clear error standard." (Citations omitted; internal quotation marks omitted.) *TES Franchising, LLC* v. *Feldman,* 286 Conn. 132, 136–38, 943 A.2d 406 (2008).

The plaintiff here contends that the trial court improperly denied its application for a prejudgment remedy because the evidence before it clearly established that the plaintiff had earned the subject commissions by procuring ready, willing and able buyers for YAH's listed units in accordance with the listing agreement.[3] "The right of a brokerage firm to recover a commission depends upon the terms of its employment contract with the seller. To be enforceable, this employment contract, often called a listing contract, must be in writing and must contain the information enumerated in General Statutes § 20-325a (b). . . . To recover its commission, the brokerage firm ordinarily must show that it has procured a customer who is ready, willing, and able to buy on terms and conditions prescribed or agreed to by the seller. . . . In the alternative, the broker may be entitled to recover if it has brought the buyer and the seller to an enforceable agreement." (Citations

---

[3] It is undisputed that the units were not sold during the term of the listing agreement.

omitted.) *Revere Real Estate, Inc.* v. *Cerato,* 186 Conn. 74, 77–78, 438 A.2d 1202 (1982). Our Supreme Court "has repeatedly held that a broker who has, in accordance with a listing contract, found a purchaser ready, willing, and able to purchase, on the owner's own terms, is entitled to its commission even though no contract for the sale of the property has ever been executed. *Dyas* v. *Akston,* 137 Conn. 311, 313, 77 A.2d 79 (1950); *Finch* v. *Donella,* 136 Conn. 621, 626, 73 A.2d 336 (1950); *Wright* v. *Reid,* 111 Conn. 141, 145, 149 A. 239 (1930)." *Storm Associates, Inc.* v. *Baumgold,* 186 Conn. 237, 242, 440 A.2d 306 (1982).

In the case before us, the listing agreement did not require the plaintiff to bring the parties to an enforceable contract in order to recover its commission; nor did it require consummation of such a contract to establish its right to a commission. The listing agreement entitled the plaintiff to recover its commission upon the procurement of a purchaser ready, willing, and able to purchase YAH's property, either upon the terms and conditions of the sale or upon any other terms and conditions acceptable to YAH. It is undisputed that the plaintiff introduced John to YAH and that he and YAH entered into a contract for the purchase and sale of unit 16 during the period of the plaintiff's exclusive listing agreement.[4] Although the sale of that unit was not

---

[4] Although the listing agreement between the plaintiff and YAH in this case does not contain any requirement that the plaintiff bring YAH and the purchaser to an enforceable contract, we note that the mere existence of a contingency clause in a contract does not render a contract unenforceable. Indeed, when events occur that trigger such a contingency clause, the events that transpire, or the remedies that are available as a result of that clause, stem from the contract itself.

YAH also misinterprets the language of the 2005 contract between YAH and John in that it suggests that the contract was contingent upon the completion of the unit. In fact, there is nothing in the contract that provides for the cancellation or avoidance of the contract if the unit is never completed. The clause regarding completion, which is entitled "Seller's Obligation to Perform," provides, inter alia: "If, at the time of closing as provided herein, the Unit shall not have been completed according to specifications

consummated prior to the expiration of the agreement, consummation of a sale was not required by the agreement to earn a commission thereunder. The timely execution of the sales contract, moreover, provided strong "eviden[ce] of the procurement of a ready, willing, and able buyer on terms acceptable to the seller, [which was] the . . . basis of recovery stipulated in the listing contract." *Revere Real Estate, Inc.* v. *Cerato*, supra, 186 Conn. 78.

In denying the plaintiff's application for a prejudgment remedy on the basis of its procurement of a buyer for the first transaction, the court relied on *Ditchkus Real Estate Co.* v. *Storm*, 25 Conn. App. 51, 592 A.2d 959, cert. denied, 220 Conn. 905, 593 A.2d 971 (1991). In *Ditchkus*, the parties had entered into a listing agreement for a period of six months, during which the plaintiff had procured a buyer that entered into negotiations with the defendant to purchase the defendant's property. As a result of those negotiations, the defendant and the buyer entered into two successive sales contracts for the property, both of which were expressly made contingent upon obtaining a zoning approval for the property. Because, by the end of the listing period, the zoning approval was not obtained, the court concluded that "[t]he plaintiff produced a buyer who was not ready or willing to purchase the defendant's property unless a certain contingency was fulfilled. . . . Thus, the contract between the defendant and [the buyer] was void before the expiration of the listing agreement." (Citations omitted.) Id., 55. Relying upon the court's holding in *Ditchkus*, the trial

agreed upon by the parties and/or a certificate of occupancy shall not have been issued for the Unit despite the due diligence of SELLER, then SELLER shall have an additional period of sixty (60) days within which to complete the Unit and secure a certificate of occupancy and the date of closing shall be extended accordingly." The contract does not indicate that the failure of YAH to complete the unit shall excuse the purchaser from fulfilling his contractual obligations.

court in this case concluded that the plaintiff had similarly failed to procure a buyer who was ready, willing and able to purchase YAH's property because the contingency that the unit be completely constructed by the closing date or within sixty days thereafter had not been met.

The court's reliance on *Ditchkus* in this regard, however, is misplaced, for two reasons. First, the contract between John and YAH for the purchase and sale of unit 16 was not expressly made contingent upon the completion of construction by the closing date or within sixty days thereafter. Although the contract contained a provision setting the closing date and providing that construction was to be completed by that date or within sixty days beyond that date, it did not describe completion by that date as a contingency or provide that the contract would become null and void if the construction schedule was not met. While it is doubtless true that John could have sued YAH for breach of contract for failing to complete construction by the listed deadline, his right to seek rescission of the contract on that basis necessarily would arise from YAH's breach of an otherwise valid and enforceable contract, as to which, in the alternative, he could just as well have sought specific performance. In short, although John could have sought to avoid the obligations of the contract based upon YAH's alleged breach of its terms, the contract between them, unlike that in *Ditchkus*, remained valid and enforceable as to YAH even after the contractually specified period for completion of construction had expired. See footnote 4 of this opinion.

The second reason why *Ditchkus* is inapplicable to the plaintiff's claim for a commission in connection with YAH's contract with John for the purchase and sale of unit 16 is that, even if completion of construction

on the contractually specified schedule could be characterized as a contingency, fulfillment of that contingency—and thus, assertedly, preservation of the plaintiff's right to receive a commission for finding a ready, willing and able buyer for unit 16—rested solely within the power and control of YAH, the seller of the listed property for whose benefit the buyer had been procured. Our Supreme Court has made it clear, however, that: "A seller cannot defeat a broker's right to its commission by his unilateral nonperformance of a sales contract unless the listing contract reserves the right to condition payment upon consummation of the sales contract." *Revere Real Estate, Inc.* v. *Cerato,* supra, 186 Conn. 80. Here, then, where nothing in the listing agreement conditioned the plaintiff's right to payment of a commission upon consummation of the sales contract, and YAH's failure to finish construction of unit 16 on the schedule promised in its sales contract was solely its responsibility, the plaintiff's right to recover a commission in connection with the sale of that unit cannot be defeated by YAH's unilateral failure to meet that schedule. We thus conclude that the court improperly found that the plaintiff had not procured a ready, willing and able buyer for YAH's property in accordance with the terms of the listing agreement as to the first transaction.

The plaintiff's claim for a commission in connection with the 2008 sale of two of YAH's other units is, as the trial court concluded, less clear. The plaintiff claims that, although the 2008 sales agreement was executed and consummated after the expiration of the listing agreement, its initial procurement of John as a buyer for unit 16 during the term of the listing agreement and later involvement in negotiating his contract to purchase that unit are sufficient to entitle it to a commission in connection with YAH's later sales of two other units in the Corporate Ridge development to John and

Rose. In support of this argument, the plaintiff relies on *Covino* v. *Pfeffer*, 160 Conn. 212, 276 A.2d 895 (1970), and *Levy, Miller, Maretz, LLC* v. *Vuoso*, 70 Conn. App. 124, 797 A.2d 574 (2002). In each of those cases, the court concluded that the plaintiff broker was entitled to a commission based upon sales of listed properties which, although not consummated until after the expiration of the subject listing agreement, were fully negotiated and agreed to within the period of the agreement.

Here, by contrast, there is no evidence that either John or Rose ever agreed, during the term of the plaintiff's listing agreement with YAH, to terms and conditions acceptable to YAH for the purchase of units 12 and 13, either as finally consummated in the 2008 transaction or otherwise. The plaintiff's principal testified that he had never seen the contract for the purchase of those units and was not privy to the terms of sale with respect to them. YAH correctly notes that no evidence was offered to suggest that the 2008 contract related in any way to negotiations or offers made during the term of the listing agreement. In the absence of such evidence, any finding that John and Rose were ready, willing and able to purchase those units from YAH during the term of the listing agreement would be entirely speculative. It was due to the lack of any such evidence that the trial court denied the plaintiff's application for a prejudgment remedy based upon any commission it claimed to have earned in connection with the 2008 transaction. We cannot conclude that the court's denial of a prejudgment remedy on the basis of that analysis constituted clear error.

The judgment is reversed with respect to the plaintiff's claim for a commission in connection with the 2005 contract with YAH for the purchase of unit 16 and the case is remanded for further proceedings on the plaintiff's application for a prejudgment remedy not

inconsistent with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.