STORM ASSOCIATES, INC. *v.* NORMA BAUMGOLD

PETERS, HEALEY, PARSKEY, ARMENTANO and WRIGHT, Js.

Argued December 9, 1981—decision released February 9, 1982

*Philip R. Shiff*, for the appellant-appellee (defendant).

*Stephen F. Donahue,* with whom, on the brief, was *Kevin L. Burns,* for the appellee-appellant (plaintiff).

PETERS, J. The principal issue in this case is whether the plaintiff, Storm Associates, Inc., has earned its commission under an exclusive real estate listing contract with the defendant, Norma Baumgold. The plaintiff, alleging that it had found buyers ready, willing, and able to purchase the listed property in Redding, sued to recover its commission and an attorney's fee. The defendant filed an answer and a counterclaim alleging misrepresenta-

tion in the plaintiff's valuation of the premises. The trial court rendered judgment for the plaintiff on its complaint and on the defendant's counter-claim but refused to award an attorney's fee. The defendant has appealed from the judgment against her on the complaint, but not on the counterclaim; the plaintiff, in a cross appeal, has appealed the denial of the attorney's fee.

The trial court's memorandum of decision and the record reveal the following facts. The plaintiff, Storm Associates, Inc., and the defendant, Norma Baumgold, entered into an exclusive listing contract on September 28, 1977. Under that contract, which was to be effective for the term of one year, the landowner, Baumgold, authorized Storm Associates, Inc., to offer the real property for sale at a price of $67,500. The listing contract provided that "[s]hould a purchaser be found or sale be made, by said owner(s), agent . . . or by any other person or agent during the life of this agreement, for such price and upon such terms or for a price and upon terms acceptable to me/us [the owner], then in consideration of your services in this connection, I/We [the owner] hereby promise to pay you 10% commission of said sale price." The listing contract contained no terms other than a description of the real property and the proposed sale price.

Shortly after the execution of the listing contract, the plaintiff brought the property to the attention of Mr. and Mrs. Bruce L. Mims.[1] They signed a written offer to purchase the property at its listed price of $67,500, but added two conditions not con-

---

[1] Although the trial court refers to the prospective purchasers as Mr. and Mrs. Mimms, the documentary record indicates that their name is Mims.

tained in the real estate listing. Their offer was expressly made "subject to clarification of SNETCO right-of-way, subject to satisfactory perc test and reasonable cost of septic system." The defendant signed this "offer to purchase" on October 3, 1977, but added that her agreement was subject to "seller's stipulations as outlined by seller's lawyer."

Thereafter, a contract of sale was prepared by the defendant's attorney containing the stipulations which the defendant had insisted upon. These stipulations reserved to the defendant a right of first refusal upon any resale of the property by the Mims and prohibited the Mims from subdividing the property. The contract containing these terms was signed by the Mims, and forwarded to the defendant, with a deposit check, on October 13, 1977. The deal was not then consummated, however, because the Mims attached to the contract a new paragraph 17, setting additional terms which were unacceptable to the defendant. After further negotiation and a new addendum prepared by the defendant, the buyers signalled their agreement to the substance of all of the defendant's terms. They added only a clarification about the consequence of the owner's failure to exercise her reserved right of first refusal in a timely fashion. Their signatures are dated October 26, 1977. On October 31, before the signed contract had been mailed to the defendant's attorney, that attorney advised the Mims' attorney that the defendant was electing not to sell. This election was neither then nor later grounded upon the Mims' clarification of the defendant's addendum. Although the contract signed by the Mims was subsequently received in the mail by the defendant's attorney, the defendant never executed the contract.

The trial court found that, on October 31, 1977, there was no meeting of the minds of the defendant and the Mims. Nonetheless, it concluded that when the defendant's attorney, after October 31, 1977, received copies of the contract of sale executed by the Mims, "the plaintiff agent had procured a buyer ready, willing and able to purchase the property in question on the terms set by the exclusive listing." Because the agent had procured a buyer upon terms prescribed by the owner, the agent had earned its commission despite the presumed absence of an enforceable agreement of sale.[2]

The defendant's appeal urges this court to find error in these conclusions of the trial court. The defendant maintains that her withdrawal, on October 31, 1977, of her offer to sell her property to the Mims necessarily defeated the plaintiff's right to its commission. We do not agree.

We have recently had occasion to note the significant difference between the rights and obligations created by a listing contract and a sales contract. *William Pitt, Inc.* v. *Taylor*, 186 Conn. 82, 84, 438 A.2d 1206 (1982); *Revere Real Estate, Inc.* v. *Cerato*, 186 Conn. 74, 81, 438 A.2d 1202 (1982). Although it is possible for the parties to agree, in the listing contract, that the real estate agent's commission is not due and payable until there has been a full consummation of a sales contract, a listing contract need not be so limited. *William Pitt, Inc.* v. *Taylor*, supra; *Revere Real Estate, Inc.* v. *Cerato*, supra; *Walsh* v. *Turlick*, 164 Conn. 75, 80, 316 A.2d 759 (1972). In the case before us, it is undisputed

[2] The rights of the defendant and the Mims against each other under the "offer to purchase" and the contract of sale are not at issue before us, and we express no opinion about what those rights may be.

that the listing contract entitled the plaintiff to recover its commission upon the procurement of a purchaser ready, willing, and able to purchase the defendant's property either on the terms of the listing contract or on terms "acceptable" to the owner. The trial court's conclusion that the plaintiff had earned its commission was based on its factual determination that the plaintiff had procured a purchaser on terms prescribed by, and hence necessarily acceptable to, the owner. This court has repeatedly held that a broker who has, in accordance with a listing contract, found a purchaser ready, willing, and able to purchase, on the owner's own terms, is entitled to its commission even though no contract for the sale of the property has ever been executed. *Dyas* v. *Akston,* 137 Conn. 311, 313, 77 A.2d 79 (1950); *Finch* v. *Donella,* 136 Conn. 621, 626, 73 A.2d 336 (1950); *Wright* v. *Reid,* 111 Conn. 141, 145, 149 A. 239 (1930).

With respect to liability under the listing contract, the only question before us is whether the trial court erred in its determination that the Mims were ready, willing, and able to buy the Redding property on the defendant's terms. It is undisputed that they had not persisted in the conditions they had originally attached to their offer to purchase, and that they were, by the end of October, financially able to purchase. Their signatures on the contract prepared by the defendant's attorney attested to their full agreement to the substance of all of the defendant's stipulations. Their delay in communicating their acceptance to the defendant, although unexplained, extended in any case to no more than a few days. Nothing in the negotiations between the parties had indicated that time was of the essence. In the light of all of these circumstances, we cannot

say that the trial court's finding that the Mims were ready, willing, and able to purchase on terms acceptable to the defendant was clearly erroneous. Practice Book § 3060D; *Revere Real Estate, Inc.* v. *Cerato,* supra; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

Belatedly the defendant has sought to interject a second defense to bar the plaintiff's recovery despite its compliance with the terms of the listing contract. Although the defendant never raised any statutory defense in her initial pleadings in the trial court, in a motion to open judgment and reargue, which the trial court denied without opinion, she complained of the trial court's failure to consider General Statutes § 20-325a (b). That section requires a listing contract to contain "the conditions of such contract or authorization." [3] Because the listing contract did not contain the terms of sale stipulated by the owner with regard to the right of first refusal and the prohibition against subdivision, it was, according to the defendant's argument, unenforceable.

It is by no means clear that this argument was sufficiently raised in the trial court to warrant our

[3] General Statutes § 20-325a provides, in relevant part: "(b) No person, licensed under the provisions of this chapter, shall commence or bring any action in respect of any acts done or services rendered after October 1, 1971, as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall (1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the parties thereto."

review. We cannot ascertain, in the absence of a memorandum of decision on the motion to reargue, whether it was rejected by the trial court for lack of timeliness or on the merits. The defendant has taken no steps to clarify this ambiguity in the record. See General Statutes § 52-226; Practice Book § 332.

Even if we were to assume that the issue is properly before us, the defendant cannot prevail. As we have repeatedly held, the formal requirements that attach to a listing contract differ from those that validate a contract of sale under the statute of frauds. *William Pitt, Inc.* v. *Taylor,* supra; *Brazo* v. *Real Estate Commission,* 177 Conn. 515, 522, 418 A.2d 883 (1979). Before the enactment of § 20-325a, we had rejected the proposition that a listing contract was required to state all of the terms and conditions essential to a contract for the sale of real property. *Wright* v. *Reid,* 111 Conn. 141, 144-45, 149 A. 239 (1930). We decline to ascribe to § 20-325a(b) any greater requirement of precision. Its commandment that the written listing contract contain "the conditions of such contract or authorization" refers to the conditions of the listing contract and not to those of the sales contract. For the listing contract, it suffices to identify the property being offered for sale and the price at which it is to be listed. See *Brazo* v. *Real Estate Commission,* supra. Although the parties may wish to impose further limitations upon the scope of the real estate broker's authority, the statute does not compel them to do so. The listing contract in the present case is thus not invalidated by its failure to state the additional terms upon which the defendant intended to condition any agreement to sell her property.

Having concluded, therefore, that the plaintiff's right to recover its commission was sufficiently established, we turn to the plaintiff's cross appeal on the subject of its attorney's fee. The listing contract provided, in this regard, that "[t]he undersigned owner(s) covenant(s) and agree(s) to pay and be responsible for all costs, disbursements and attorney's fees incurred in any action to collect any commission earned pursuant to the above." Relying on this clause, the plaintiff introduced, in the trial court, a bill in the amount of $1200 for an attorney's fee for services rendered in connection with the present matter. This evidence was received without objection for the purpose of establishing the amount due. Because the plaintiff failed to buttress this bill with evidence as to its reasonableness, the trial court refused to include any attorney's fee in its award to the plaintiff.

The plaintiff argues that the trial court erred in failing to presume the reasonableness of its incurred expenses in the absence of countervailing evidence of unreasonableness. It is to be noted that the plaintiff derives its right to recover an attorney's fee in this case from its contract and not from a claim for damages. See *Litton Industries Credit Corporation* v. *Catanuto,* 175 Conn. 69, 76, 394 A.2d 191 (1978). The defendant's reliance on cases assigning to a plaintiff the burden of proof with respect to damages; *Slattery* v. *Maykut,* 176 Conn. 147, 151, 405 A.2d 76 (1978); *Bertozzi* v. *McCarthy,* 164 Conn. 463, 468, 323 A.2d 553 (1973); is therefore inapposite. Under the terms of this contract, the plaintiff was entitled to an attorney's fee which it had "incurred" without express regard to its reasonableness. Cases interpreting contract clauses which require the payment of "reasonable attor-

ney's fees," where we have required an evidentiary showing of reasonableness, are therefore equally inapposite. *Stelco Industries, Inc.* v. *Cohen,* 182 Conn. 561, 567-68, 438 A.2d 759 (1980); *Lebowitz* v. *McPike,* 151 Conn. 566, 568, 201 A.2d 469 (1964). We are persuaded that a contract clause calling for the reimbursement of fees "incurred" by the plaintiff permits the recovery of such fees upon the presentation of an appropriate bill, whether such fees are payable to an attorney or to a physician. In the latter case, we have long held that "proof of the expenses paid or incurred affords some evidence of the value of the services, and if unreasonableness in amount does not appear from other evidence or through application of the trier's general knowledge of the subject-matter, its reasonableness will be presumed." *Carangelo* v. *Nutmeg Farm, Inc.,* 115 Conn. 457, 462, 162 A. 4 (1932); *Flynn* v. *First National Bank & Trust Co.,* 131 Conn. 430, 436, 40 A.2d 770 (1944). Similarly, a contract clause providing for reimbursement of "incurred" fees permits recovery upon the presentation of an attorney's bill, so long as that bill is not unreasonable upon its face and has not been shown to be unreasonable by countervailing evidence or by the exercise of the trier's own expert judgment. Since the record before us does not question the presumed regularity of the tendered bill in any of these respects, the trial court was in error in refusing to award the plaintiff its attorney's fee in the amount of $1200.

There is error in part, the judgment is set aside and the case is remanded with direction to modify the judgment in accordance with this opinion.

In this opinion the other judges concurred.