HAROLD R. STICKLOR *v.* WOODLAND HOUSE
CONDOMINIUM, INC.
(4254)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued October 10—decision released December 16, 1986

*L. Paul Sullivan,* for the appellant (plaintiff).

*Kirk D. Tautigian, Jr.,* with whom, on the brief, were *John B. Nolan* and *Ralph Chin,* for the appellee (defendant).

SPALLONE, J. The plaintiff is appealing from the judgment rendered after the trial court granted the defendant's motion for summary judgment. The dispositive issue is whether the parties' brokerage agreement is

unenforceable under General Statutes § 20-325a (b)[1] because it failed to identify the specific units of the defendant's condominium complex to be sold and also failed to set forth the sales price for those units. Because we conclude that General Statutes § 20-325a (b) did not require that this information be included in the broker's agreement in these particular circumstances, we find error in the decision of the trial court.

On April 15, 1983, the plaintiff, a licensed real estate broker, entered into a broker's agreement[2] with the

---

[1] General Statutes (Rev. to 1983) § 20-325a (b) provides: "No person, licensed under the provisions of this chapter, shall commence or bring any action in respect of any acts done or services rendered after October 1, 1971, as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall (1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the parties thereto."

[2] The entire agreement is as follows:

"BROKER AGREEMENT

Woodland House Condominium, Inc., the Seller of Woodland House Condominium, hereby outlines the terms of its Broker Agreement.

1. The broker or his properly identified representative must bring the prospective client to Woodland House and properly register him to receive a commission if a sale should result.

2. All prospective purchasers registered by the broker or his properly identified representative will be protected for a period of not less than 90 days.

3. The rate of commission will be 3% unless otherwise notified. All commissions will be paid in full at time of funding. No advances will be given. The 3% commission is based on the *net* proceeds to the Seller, after any credits and/or discounts, if applicable.

WOODLAND HOUSE CONDOMINIUM, INC.

| | |
|---|---|
| BROKER: | ACCEPTED: |
| (Signed) | (Signed) |
| | |
| (Authorized Signature) | (Authorized Signature) |
| (Signed) | 4/15/83 |
| | |
| (Company Name) | (Date) |
| April 9, 1983 | |
| | |
| (Date)" | |

defendant, who was the developer, owner and seller of Woodland House, a condominium complex consisting of 237 units in Hartford. The agreement obligated the plaintiff to register, at the condominium complex, the names of any prospective purchasers that the plaintiff brought to Woodland House. The agreement provided that the clients registered by the plaintiff or his agent would be "protected" for a period of not less than ninety days. The agreement also set forth the rate and terms for the payment of any commissions due the plaintiff.

Pursuant to the agreement, the plaintiff brought Mark Breen to Woodland House and registered him as a prospective purchaser. Breen, through his corporation, B/M Redev. Corp., purchased twenty-five units of the condominium complex from the defendant for a total price of $1,109,615. Upon completion of the sale, the plaintiff requested from the defendant, in accordance with their agreement, a commission totaling $33,288.45. The defendant refused to pay anything to the plaintiff, whereupon the plaintiff brought suit for breach of contract by the defendant. The defendant moved for summary judgment, claiming that the broker's agreement did not conform to General Statutes § 20-325a (b). The trial court agreed and rendered summary judgment for the defendant.

The trial court concluded that the agreement did not conform to General Statutes § 20-325a (b) because it failed to describe the units to be sold or the price of each unit. Accordingly, we must decide whether the brokerage contract in this case was required under § 20-325a (b) to contain this information.

General Statutes § 20-325a (b) establishes the requirements for a broker to maintain an action for a com-

mission or service. It requires, inter alia, that all broker's agreements "contain the conditions of such contract or authorization," in order to be enforceable. General Statutes § 20-325a (b) (4). This section was considered by our Supreme Court in *Storm Associates, Inc.* v. *Baumgold,* 186 Conn. 237, 440 A.2d 306 (1986). There, the court distinguished the requirements for a listing contract from the more stringent requirements for sales contracts. In determining that § 20-325a (b) had been satisfied on that occasion, the court stated: "As we have repeatedly held, the formal requirements that attach to a listing contract differ from those that validate a contract of sale under the statute of frauds. . . . Before the enactment of § 20-325a, we had rejected the proposition that a listing contract was required to state all of the terms and conditions essential to a contract for the sale of real property. *Wright* v. *Reid,* 111 Conn. 141, 144–45, 149 A. 239 (1930). We decline to ascribe to § 20-325a (b) any greater requirement of precision. Its commandment that the written listing agreement contain 'the conditions of such contract or authorization' refers to the conditions of the listing contract and not to those of the sales contract. For the listing contract it suffices to identify the property being offered for sale and the price at which it is to be listed." (Citations omitted.) *Storm Associates, Inc.* v. *Baumgold,* supra, 244–45.

Although the court in *Storm Associates* indicated that "it suffices to identify the property being offered for sale and the price at which it is to be listed"; id., 244; as a requirement necessary to conform the agreement in that case to § 20-325a (b) (4), we decline to interpret that language as setting the standard for every broker's contract. The key statutory words are that the contract must contain the "conditions of such contract or autho-

rization." In *Storm Associates,* the property was a single barn located on 6.63 acres, and the broker's agreement granted the real estate broker an exclusive right to sell the property. *Storm Associates, Inc.* v. *Baumgold,* supra, 239; A-787 Rec. & Briefs, Position 4, Defendant's Brief, Appendix, p. 1A. In that case, the property description and the sale price were "conditions of such contract or authorization." Here, in contrast, the property was a 237 unit condominium complex and the broker's primary obligation was to find potential buyers for the seller rather than to sell the units himself. It is apparent from the nature of the premises, and the failure of the agreement to contain the purchase price of the individual units, that the defendant was reserving to itself the right to determine which unit it was willing to sell and the price it would accept for any given unit. In this case, therefore, it was not necessary that the contract specify the particular location and price of the units in order to state the "conditions of such contract or authorization" under General Statutes § 20-325a (b) (4). The defendant does not contend that the contract failed to satisfy any other requirements of § 20-325a (b). The trial court therefore erred when it concluded that the agreement between the parties was unenforceable because it failed to comply with § 20-325a (b).

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.