[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action to collect a real estate commission. The plaintiff, Richard Palmer, is a licensed real estate salesperson who worked for Beaudry Associates, Inc. (Beaudry), whose principal was a licensed real estate broker.[1] The plaintiff brings this suit as an assignee of Pyramid Real Estate and Management Company (Pyramid), the successor to Beaudry. The defendant, Bruno Daraz, is the owner of a commercial building at 33 Taylor Reed Place, Stamford.
The case was tried to the court and the following facts are found. On January 10, 1988, the defendant signed an "Open Listing Agreement" with Beaudry as the broker. This agreement was signed by the plaintiff on behalf of Beaudry, and pertained to the lease and/or sale of the defendant's building on Taylor Reed Place. The listing agreement provided that Beaudry would be owed a commission if, within one year after the expiration date of the agreement, that is, no later than May 30, 1989, the property was sold or leased to a customer of Beaudry. The agreement also provided that if the defendant leased his property to a customer of Beaudry, who subsequently purchased the property, Beaudry would be owed a commission on the sale.[2] This listing agreement did not contain a specific sales price, but instead provided that the price and terms of any such sale would be "negotiated" at a "price acceptable to Owners."
The plaintiff, on behalf of Beaudry, showed the subject premises to Acme Rubber Stamp, Inc. (Acme), acting by its president and chief officer, Stephen Trell. On November 30, 1988, the defendant and Acme entered into a twelve year lease.[3] The lease gave an option to Acme to purchase the premises, but there was no reference to any particular sales price. The lease recognized Beaudry as the broker and further provided that the total commission was due upon the signing of the lease. However, as an accommodation to the defendant, Beaudry agreed that the commission due for this lease between the defendant and Acme could be paid on an annual basis over the course of the lease. The defendant made annual payments of this commission to Beaudry for approximately seven years. The lease also gave an option to Acme to purchase the premises, but there was no reference to any CT Page 2112 particular sales price.
The assets of Beaudry, including the open listing agreement which is the subject of this suit, were acquired by Pyramid in 1989. In 1995, Acme decided it wanted to purchase the subject premises, but the defendant was reluctant to sell. Acme commenced a lawsuit against the defendant which was eventually settled on October 10, 1995. On that date the defendant sold the premises, but instead of title being placed in Acme's name, title was taken in the name of Maxon, LLC, whose principal was Stephen Trell. Maxon, LLC was formed by Trell to take title to the subject premises for tax purposes. The purchase price was $340,000, and Pyramid sent a bill to the defendant claiming a five per cent commission or $17,000. On January 10, 1996, Pyramid, as successor to Beaudry, orally assigned to the plaintiff, as assignee, its rights to seek a commission from the defendant. This lawsuit was commenced on January 19, 1996.
The original complaint contained three counts. The first count was based on a listing agreement. The second and third counts allege unjust enrichment and reliance on the defendant's promise of compensation, respectively. The original complaint referred to the exclusive listing agreement, dated July 1, 1988. See footnote 3. This agreement is between Graft Company, Inc., the owner of the business, and Beaudry as the broker. The plaintiff indicates that he attached the exclusive listing agreement to the original complaint by mistake. After realizing his error, the plaintiff filed an amended complaint dated February 13, 1996, which refers to the "Open Listing Agreement" of January 10, 1988. This open listing agreement is signed by the defendant Daraz, individually, as owner of 33 Taylor Reed Place, and by Beaudry as the broker.[4]
The defendant denied that he owed a real estate commission to the plaintiff and filed two special defenses on March 29, 1996. The first special defense claimed that a commission was not due because a sale of the premises did not occur within the time period specified in the open listing agreement. The second special defense contended that the open listing agreement of January 10, 1988, was superceded and supplanted by the exclusive listing agreement of July 1, 1988 between Graft Company, Inc. and Beaudry.
The right of a broker to recover a real estate commission depends upon the terms of the listing agreement with the seller. CT Page 2113 A listing agreement must conform with General Statutes § 20-325a
(b). Revere Real Estate. Inc. v. Cerato, 186 Conn. 74, 77,438 A.2d 1202 (1982).
The issues in this case are as follows: Is the open listing agreement invalid under General Statutes § 20-325a (b) because it does not contain a specific sales price?[5] If so, was, this invalidity cured by Public Act 94-240, effective July 1, 1994, which amended General Statutes § 20-325a to provide that a broker may recover a commission if the listing agreement is in "substantial compliance" with the statute? The next issue is whether the open listing agreement entitles a broker to a commission? If so, the issue then becomes the validity of the assignment from Pyramid to the plaintiff. What is the effect of the fact that the assignment was not in writing? Does the assignment fail because it attempts to assign a "personal services" contract, which cannot be assigned? Finally, does it make any difference that title to the building was taken in the name of Maxon, LLC, and not in the name of Acme, the named tenant on the lease?
Does the absence of a particular and definite price in the open listing agreement violate General Statutes § 20-325a
(b)? The plaintiff cites Sticklor v. Woodland House Condominium,Inc., 9 Conn. App. 293, 297, 518 A.2d 949, cert. denied,202 Conn. 807, 520 A.2d 1288 (1987), which held that if such sales price was subject to the approval of the owner, i.e., that the price was subject to negotiation, then the absence of a specific sales price was not fatal to the recovery of a sales commission. The defendant cites New England Land Co., Ltd. v. DeMarkey213 Conn. 612, 622-23, 569 A.2d 1098 (1990), for the proposition that the listing agreement must contain a specific lease or sale price. In the New England Land Co. Ltd., case, the Supreme Court expressed no opinion concerning the holding in Sticklor, noted that it was factually distinguishable, and adhered to its former position that a particular price must appear because "this case is devoid of any facts indicating any reservation to the seller to determine the sales price." Id., 623. In this present case, the listing agreement makes it clear that the defendant will determine the final price. This court agrees with and adopts the holding in Sticklor. Thus, the plaintiff has demonstrated that the listing agreement satisfies the requirements of General Statutes § 20-325a (b).[6]
Moreover, it would be unrealistic and impractical in this CT Page 2114 case to establish a definite and specific sales price for a tenant to purchase in the future. In long term leases, such as the twelve year lease in this case, fair market value can fluctuate considerably over the course of the lease, and neither the owner nor a purchaser would want to commit to a specific price far in advance of a sale.
The defendant also argues that the listing agreement does not contain a "time for performance." This argument is rejected because the listing agreement provided that a tenant must purchase the leased premises during the term of the lease in order for the broker to be entitled to a commission.
The next issue involves whether the broker is entitled to recover a commission under the terms of the listing agreement with the defendant. Acme was the tenant of the defendant, the owner of the building at Taylor Reed Place. The defendant paid a commission to Beaudry, the broker, for finding Acme as a tenant. The listing provides that if a tenant subsequently purchased the property, the defendant owes a commission to the broker who found the tenant. The listing agreement does not contain a specific date for a sale to a tenant, but provides that such sale must occur during the term of the lease. The agreement recognizes that the broker's commission on the sale must be reduced by the commission received on the lease. If a tenant purchases, then a commission is due the realtor who brought the tenant to the subject premises. This provision is unambiguous. The defendant's claim that the purchase by the tenant must occur within the term of the open listing agreement, i.e., by May 30, 1989, attempts to add a condition that is not present in the listing agreement.
It has been pointed out that Acme took title to the subject premises in the name of Maxon, LLC, which is controlled by Stephen Trell, the principal of Acme. This fact does not cause a forfeiture of the commission, or any owner could avoid paying a commission when conveying title to a tenant by simply having the latter take title in another name. Thus, the plaintiff's right to a commission is not defeated by the fact that Maxon, LLC was the purchaser of record. Steven Trell and his wife control both Acme and Maxon, LLC. If these two entities were not, in effect, the same, how could Maxon, LLC ever take title? Only Acme, as the existing tenant, had the right to purchase the subject premises. The twelve year lease would still have about five years to run, and neither Maxon, LLC, or anyone else, could simply step in and execute an option to purchase which belonged to the named CT Page 2115 tenant, Acme.
The final issue involves the Pyramid's assignment to the plaintiff of the right to pursue collection of the commission. The first question is whether the right to bring suit could be assigned? If it can, does the assignment have to be in writing? The defendant argues that a listing agreement between a property owner and a realtor is a "personal services contract" which is not assignable according to Rossetti v. New Britain,163 Conn. 283, 291, 303 A.2d 714 (1972). In that case, the Supreme Court distinguished between the "benefits" of such a contract, which may be assigned, and the "duties" which are "nondelegable." In this present case, the "benefits" of suing for and obtaining a commission were assigned, not the duty of Beaudry to act as a broker.
In support of his argument, the defendant also refers to General Statutes § 52-118 which provides that, although a "chose in action" may be assigned, and the assignee may sue thereon, the assignee must allege that he is the owner of the chose in action and state when and how he acquired title thereto. See Practice Book § 190 to the same effect. In his complaint, the plaintiff alleges that he is the successor in interest to Beaudry's rights to a commission. In Bouchard v. People's Bank,219 Conn. 465, 470-71, 594 A.2d 1 (1991), the court held that one need not plead the exact language of General Statutes § 52-118
in order to sue on an assignment of a chose in action. The use of the phrase "successor in interest" was held to suffice. Thus, the plaintiff presented sufficient proof that Pyramid had succeeded to Beaudry's rights and that Pyramid had validly assigned the right to sue for a commission to the plaintiff.
Cory Gubner, president of the brokerage division of Pyramid, testified that he orally assigned Pyramid's claim for a commission to the plaintiff. The defendant contends that an assignment of a chose in action, such as the right to sue for a real estate commission, must be in writing, just as a real estate listing agreement must be in writing. However, the defendant did not cite a case that holds that an assignment of a chose in action must be in writing. The Bouchard case certainly does not so hold.
Thus, the plaintiff has established that the listing agreement complies with General Statutes § 20-325a (b), and that he is a legitimate assignee of the right to sue to obtain a CT Page 2116 commission. Judgment may therefore enter in favor of the plaintiff and against the defendant, Bruno Daraz, for $17,000. Costs are to be taxed in favor of the plaintiff by the office of the chief clerk in accordance with General Statutes § 52-257
and Practice Book § 412.
So Ordered.
Date at Stamford, Connecticut, this 24 day of February, 1998.
William B. Lewis, Judge